UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RAQ BEY, | Case No. 18-cv-02626-SI |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| JARED MALEC, et al., | |
| Defendants. | Re: Dkt. No. 100 |

On March 6, 2020 defendants Jared Malec, Kevin Goodman, Ronald Shepard, Dino Cristiani and Andrew Yu (collectively "defendants") filed the instant motion for summary judgment arguing there are no material issues of fact regarding plaintiff Raq Bey's only remaining cause of action for excessive force. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendants' motion.

**BACKGROUND[1]**

On October 31, 2017 around 11:00 p.m., Plaintiff Raq Bey was driving his vehicle in Emeryville, California on 40th Avenue. Dkt. No. 1 at 15[2] (Complaint); Dkt. No. 100 at 7 (Motion for Summary Judgment). Defendant Officer Malec was driving in his marked patrol vehicle and observed Mr. Bey make an illegal U-turn from westbound 40th Avenue to eastbound 40th Avenue. Dkt. No. 105 at ¶ 5 (Decl. of Officer Malec). Officer Malec pulled behind Mr. Bey's car and turned

---

[1] Unless otherwise stated, these facts are undisputed.

[2] For ease of reference, all citations to page numbers refer to the ECF branded number in the upper right corner of documents.

1    on his emergency overhead lights to initiate a traffic stop. Dkt. No. 110 at 5 (Opp.); Dkt. No. 100
2    at 8 (Motion for Summary Judgment). Mr. Bey did not pull his car over or otherwise react; Officer
3    Malec then issued a voice command over his patrol vehicle's loudspeaker, instructing Mr. Bey to
4    pull over and stop his vehicle. Dkt. No. 105 at ¶¶ 8, 10 (Malec Decl.); Dkt. No. 110 at 5, 7 (Opp.).

5    Mr. Bey states he was overwhelmed with fear and called 911 on his cell phone while an
6    unidentified vehicle trailed behind him in his blind spot with flashing lights, making it difficult for
7    Mr. Bey to see. Dkt. No. 110 at 5-6 (Opp.). Mr. Bey continued driving at a slow speed between
8    eight and sixteen miles per hour on 35th Street where the speed limit is 25 mph. Dkt. No. 105 at ¶¶
9    8, 10 (Malec Decl). Mr. Bey states he was terrified and could not fully concentrate on driving while
10   on the phone with 911. Dkt. No. 110 at 7 (Opp.). Officer Malec states Mr. Bey's vehicle straddled
11   different lanes during the pursuit – yet another driving violation.[3] Dkt. No. 105 at ¶ 10 (Malec
12   Decl.). Based on this observation, Officer Malec suspected Mr. Bey was under the influence of
13   alcohol or drugs. Dkt. No. 105 at ¶¶ 9, 11 (Malec Decl.). Officer Malec observed Mr. Bey holding
14   a cell phone to his right ear during the pursuit -- another driving violation. Dkt. No. 105 at ¶ 12
15   (Malec Decl.). During the pursuit, Officer Malec called for backup, which arrived within 60 seconds
16   from the start of the pursuit. Dkt. No. 107 at ¶ 6 (Shepard Decl.); Dkt. No. 110 (Opp.).

17   Sergeant Goodman responded to Officer Malec's call for backup and coordinated with
18   Officer Malec to stop Mr. Bey's vehicle; Sergeant Goodman positioned his marked patrol vehicle
19   in front of a freeway onramp to ensure Mr. Bey's vehicle could not enter the freeway. Dkt. No. 105
20   at ¶ 17 (Malec Decl.); Dkt. No. 110 at 7 (Opp.). Officer Malec states Mr. Bey attempted to drive
21   past Sergeant Goodman who was blocking the on-ramp; Mr. Bey states he was "run off the road."
22   Dkt. No. 110 at 7 (Opp.). Officers Ronald Shepard, Dino Cristiani and Andrew Yu were also on
23   the scene in marked patrol vehicles. Dkt. No. 103 at ¶ 4 (Yu Decl.); Dkt. No. 107 at ¶ 6 (Shepard
24   Decl.).

25   Mr. Bey stopped his vehicle but the engine was still running. Dkt. No. 105 at ¶¶ 18, 19

---

[3] Mr. Bey does not dispute his vehicle straddled different lanes during the pursuit, but states "[he] could not concentrate" while "trying to inform the 911 operator of everything happening around [him] and at the same time focus on the road . . .." Dkt. No. 110 at 7 (Opp.).

2

(Malec Decl.). Mr. Bey's vehicle was boxed in by Sgt. Goodman's patrol vehicle in front, Officer Malec's to the back, and shoulder of the freeway to the right. Dkt. No. 105 at ¶ 17 (Malec Decl.). Officer Malec approached Mr. Bey's driver side window with his duty weapon drawn. Dkt. No. 105 at ¶ 18 (Malec Decl.); Dkt. No. 110 at 7 (Opp.). Sgt. Goodman approached the car along with Officer Malec. Dkt. No 106 at ¶ 10 (Goodman Decl.). Mr. Bey stated that at a minimum four adult men approached his vehicle with guns and batons on their waist, and at least one had an actual gun drawn. Dkt No. 110 at 7 (Opp.). Officer Malec ordered Mr. Bey to "raise his hands and exit the vehicle" multiple times. Dkt. No. 105 at ¶ 19 (Malec Decl.). Mr. Bey did not move from his vehicle and continued to hold his phone with a blank stare on his face. Dkt. No. 105 at ¶ 19 (Malec Decl.). Sgt. Goodman proceeded to use his patrol flashlight and break the driver side window.[4] Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶ 20 (Malec Decl.). It is unclear how much time passed between when Mr. Bey stopped his vehicle and when the driver side window was broken. Dkt. No. 1 (Compl.); Dkt. No. 110 at 13 (Opp.); Dkt. No. 106 at ¶ 11 (Goodman Decl.).

Officer Malec reached inside Mr. Bey's vehicle, unlocked and opened the door; he states he smelled alcohol and marijuana. Dkt. No. 105 at ¶¶ 23, 32 (Malec Decl.). Officer Malec asked Mr. Bey to exit the vehicle and when Mr. Bey did not comply, Officer Malec unbuckled Mr. Bey's seatbelt. Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶¶ 23, 24 (Malec Decl.). Officer Malec alleges Mr. Bey leaned towards the center console of the vehicle when Mr. Bey was directed to exit the vehicle.[5] Dkt. No. 105 at ¶¶ 23, 26 (Malec Decl.). Officer Malec, Cristiani and Shepard ultimately removed Mr. Bey from the vehicle. Dkt. No. 105 at ¶ 26 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Officer Malec states that once Mr. Bey was outside of the vehicle, he was instructed to "get on the ground," but he did not.[6] Dkt. No. 105 at ¶ 27 (Malec Decl.). Officer Malec states Mr. Bey tensed

---

[4] Mr. Bey states the officers yelled at him for approximately 10 seconds, but no more than 30 seconds, prior to breaking the window. Dkt. No. 1 (Complaint); Dkt. No. 110 at 13 (Opp.). Defendants state Mr. Bey was repeatedly asked to exit the vehicle before Sgt. Goodman used his flashlight to break the driver's side window. Dkt. No. 106 at ¶ 11 (Goodman Decl.)

[5] Mr. Bey does not confirm or deny that he leaned toward the center console of his vehicle.

[6] The parties dispute whether Mr. Bey was instructed to get on the ground before being forced or whether it was immediately after the removal.

his arms and kept them at angles, which prevented the officers from placing his arms behind his back and applying handcuffs. Dkt. No. 105 at ¶ 27 (Malec Decl.). Officer Malec attempted to use a leg sweep technique[7] to get Mr. Bey to the ground but was unsuccessful. Dkt. No. 105 at ¶ 27 (Malec Decl.); Dkt. 110 at 16 (Opp.). Mr. Bey states he was grabbed by multiple officers and violently slammed into the concrete. Dkt. No. 110 at 8 (Opp.). Officer Malec states there was a struggle to get Mr. Bey to the ground. Dkt. No. 105 at ¶ 28 (Malec Decl.). Officer Cristiani grabbed Mr. Bey's left arm and guided him to the ground. Dkt. No. 104 at ¶ 9 (Cristiani Decl.). Mr. Bey states he was twisted and kicked while on the ground in a painful manner. Dkt. No. 110 at 8 (Opp.).

While on the ground, the Officers had difficulty applying handcuffs to Mr. Bey. Dkt. No. 105 at ¶¶ 26, 27 (Malec Decl.). Officers ordered Mr. Bey to put his right hand behind his back. Dkt. No. 105 at ¶ 28 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Officer Malec alleges that Mr. Bey did not comply with the order to put his hands behind his back and instead tensed and bent his right arm to keep it in front of his head.[8] Dkt. No. 105 at ¶ 28 (Malec Decl.). Mr. Bey was placed in a control hold by Officer Shepard. Dkt. No. 107 at ¶ 10 (Shepard Decl.). Unable to handcuff Mr. Bey, Officer Malec delivered a knee strike to Mr. Bey's right bicep to get Mr. Bey's right hand behind his back. Dkt. No. 105 at ¶ 29 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Officer Malec's knee strike was unsuccessful so he delivered a second, successful, knee strike to Mr. Bey's right bicep and Officer Yu was able to place Mr. Bey in handcuffs. Dkt. No. 105 at ¶ 28 (Malec Decl.); Dkt. No. 103 at ¶ 9 (Yu Decl.); Dkt. No. 110 at 8 (Opp.).

After Mr. Bey was placed in handcuffs and the officers completed the arrest, Mr. Bey asked multiple times why he was being arrested. Dkt. No. 110 at 9 (Opp.); Dkt. No. 105 at ¶ 31 (Malec Decl.). Officer Malec states that Mr. Bey would not identify himself. Dkt. No. 105 at ¶ 30 (Malec Decl.). Officers asked Mr. Bey for his California I.D., to which Mr. Bey stated he does not carry

---

[7] "The purpose of a leg sweep is to effectuate control over Mr. Bey and safely get him into custody." Dkt. No. 105 at ¶ 28 (Malec Decl.). The leg sweep technique is performed by an officer using his own legs to take a suspect's legs out from under him.

[8] Mr. Bey disputes that he resisted, stating "[he] was not resisting and had no power to move and resist…[defendant's] demanded that [he] put [his] right arm behind [his] back, which would have been physically impossible." Dkt. No. 110 at 8 (Opp.).

4

one. Dkt. No. 110 at 9 (Opp.). During a search of Mr. Bey's vehicle, Officer Malec located a piece of mail addressed to Quinci Greene. Dkt. No. 105 at ¶ 30 (Malec Decl.). Officer Malec searched Quinci Greene in the CRIMS databased and confirmed Mr. Bey and Quinci Greene are the same person. Dkt. No. 105 at ¶ 30 (Malec Decl.). The records check done by Officer Malec showed Quinci Greene had a suspended driver's license and an outstanding warrant for driving under the influence. Dkt. No. 105 at ¶ 30 (Malec Decl.). Mr. Bey repeatedly told the officers he was not Quinci Greene, but Raq Bey. Dkt. No. 110 at 9 (Opp.).

Approximately twenty minutes after the arrest, Mr. Bey was taken to a nearby county jail. Dkt No. 110 at 9 (Opp.). Officer Malec gave Mr. Bey the chemical admonition required by law for a breathalyzer test; Mr. Bey argues he was forced to take the breathalyzer test. Dkt. No. 105 at 37 (Malec Decl.); Dkt. No. 110 at 9 (Opp.). The results of the breathalyzer test showed Mr. Bey had a blood alcohol content of 0.00. Dkt. No. 1 at 122 (Compl. – Exhibit AA10 – "Alameda County Sheriff's Office Crime Laboratory Alotest Results"). None of the officers heard Mr. Bey complain or show signs of pain or obvious injuries during or after the arrest. Dkt. No. 103 at ¶ 10 (Yu Decl.); Dkt. No. 104 at ¶ 10 (Cristiani Decl.); Dkt. No. 105 at ¶ 36 (Malec Decl.); Dkt. No. 106 at ¶ 18 (Goodman Decl.); Dkt. No. 107 at ¶ 11 (Shepard Decl.). In Mr. Bey's deposition, he reported pain in his sides, back, shoulder and wrists on the night of the arrest. Dkt. No. 101 at 5 (Robinson Decl. – Ex. A "Depo. of Raq Bey). Mr. Bey testified all physical pain healed "after that night was pretty much done." Dkt. No. 101 at 5 (Robinson Decl. – Ex. A "Depo. of Raq Bey).

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, discovery, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate an absence of evidence to support the non-moving party's case. *Id*. at 325.

5

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, (1986).

For summary judgment, the Court must view evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . ." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Parties must present admissible evidence. Fed. R. Civ. P. 56(c).

## DISCUSSION

### I. Excessive Force Claim

Plaintiff's Third Amended Complaint ("TAC") alleges defendants used excessive force during the October 31, 2017 incident. Dkt. No. 58 at 15 (TAC). Defendants' motion analyzes six instances of use of force : (1) Sgt. Goodman breaking the driver's side window; (2) plaintiff's removal from the vehicle by Officers Malec, Shepard and Cristiani; (3) Malec's post-removal leg-sweep attempt on the plaintiff; (4) Officer Shepard's use of a control hold while officers attempted to place plaintiff in handcuffs; (5) Officer Malec's first knee strike; and (6) Officer Malec's second knee strike. Dkt. No. 100 at 13 (Mot.); Dkt. No. 110 at 15-17 (Opp.). The defendants move for summary judgment on plaintiff's excessive force claim arguing each officer used reasonable force as a matter of law. Dkt. No. 100 (Mot.). In the alternative, defendants argue that they are entitled to qualified immunity. *Id*.

When a plaintiff alleges an officer used excessive force in the course of an arrest or seizure,

1   the constitutional right at issue is the Fourth Amendment right to be free from "unreasonable
2   seizures." U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Determining
3   whether the force used to effect a particular seizure is reasonable under the Fourth Amendment
4   requires a careful balancing of the ***nature and quality of the intrusion*** of the individual's Fourth
5   Amendment interests against the countervailing governmental interests at stake." *Id*. at 396
6   (citations and internal quotation marks omitted) (emphasis added).  Because the reasonableness
7   standard is not capable of precise definition or mechanical application, "its proper application
8   requires careful attention to the facts and circumstances of each particular case, including [1] the
9   severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the
10  officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by
11  flight." *Id*.

12  The reasonableness inquiry in excessive force cases is an objective one, the question being
13  whether the officer's actions are objectively reasonable considering the facts and circumstances
14  confronting him, without regard to his underlying intent or motivation and without the "20/20 vision
15  of hindsight." *Graham*, 490 U.S. at 396.  These factors are not exclusive, and a court must examine
16  the totality of circumstances.  *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012).

### A. Nature of Intrusion

The Court first considers "the nature and quality" of the intrusion on Plaintiff's rights. *Coles*, 704 F.3d at 628. "The gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured with reference to 'the type and amount of force inflicted.'" *Young v. County of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) (*quoting Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001)).

Plaintiff has not established a prima facie case of a Fourth Amendment intrusion for purposes of the instant summary judgment motion, where the evidence on this record establishes defendants employed a level of force that is "low on the continuum of tactics available to police officers." *Donovan v. Phillips*, No. 3:14-cv-00680-CRB, 2015 WL 993324, at *5 (N.D. Cal. Mar. 4, 2015). Officer Malec attempted to initiate a routine traffic stop based on an illegal U-turn. Dkt. No. 105 at

¶ 5 (Malec Decl.). However, plaintiff did not pull over, even though he knew from the flashing lights and verbal commands that he was to do so. Dkt. No. 105 at ¶¶ 8, 10 (Malec Decl.); Dkt. No. 110 at 5, 7 (Opp.). Not only did plaintiff not pull over, plaintiff continued driving and only when police vehicles surrounded plaintiff, and he was forced to stop his vehicle, did plaintiff stop. Dkt. No. 105 at ¶ 17 (Malec Decl.); Dkt. No. 110 at 7 (Opp.). Within this context, and after multiple commands to get out of his vehicle, the defendant officers broke plaintiff's driver side window, unlocked and opened the driver door, and removed plaintiff from the car. Dkt. No. 105 at ¶ 26 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). The officers instructed plaintiff numerous times to get on the ground but he did not comply. Dkt. No. 105 at ¶ 27 (Malec Decl.). Defendant officers admit they used force in the form of a leg sweep, to get plaintiff to the ground, as well as knee strikes, to handcuff and arrest plaintiff. Dkt. No. 100 (Compl.) at 17-18; Dkt. No. 110 at 16-17 (Opp.). The Court finds this force was proportional and reasonable.

**Claim Against Officer Yu**. The record shows there is no factual basis for plaintiff's excessive force claim against Officer Yu. It is undisputed that Officer Yu responded to the scene and simply applied handcuffs to the plaintiff. Dkt. No. 105 at ¶ 28 (Malec Decl.); Dkt. No. 103 at ¶ 9 (Yu Decl.); Dkt. No. 110 at 8 (Opp.). There is no evidence Officer Yu used any force against plaintiff. Accordingly, the Court GRANTS summary judgement with respect to Officer Yu.

**Claim Against Sgt. Goodman – Breaking of Driver Side Window**. Defendant Sgt. Goodman is also entitled to summary judgment. Plaintiff's claim against Officer Goodman is based on a single act: Goodman breaking the driver side window of plaintiff's vehicle. Dkt. No. 110 at 8 (Opp.); Dkt. 105 at ¶ 20 (Malec Decl.). There is a dispute of fact as to the amount of time that elapsed between when Mr. Bey was given commands to exit his vehicle and when Sergeant Goodman broke the driver side window with his patrol flashlight. Dkt. No. 110 at 8 (Opp.); Dkt. 105 at ¶ 20 (Malec Decl.). Plaintiff estimates ten seconds but no more than 30 seconds, whereas defendants do not offer a time estimate. Dkt. No. 1 (Compl.); Dkt. No. 110 at 13 (Opp.); Dkt. No. 105 at ¶ 19 (Malec Decl.). However, given the context in which the stop took place – slow speed car chase, Mr. Bey's failure to respond to previous commands, Mr. Bey's refusal to turn the car off once it was stopped, and his refusal to step out of the vehicle or even open the car door – Officer

Goodman acted reasonably. Dkt. No. 105 at ¶¶ 18, 19 (Malec Decl.).

**Forcible Removal From Vehicle**. Defendants admit Officers Malec, Cristiani, and Shepard forcibly removed plaintiff from the vehicle. Dkt. No. 105 at ¶ 26 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Defendants also admit defendant Officer Malec unsuccessfully attempted to use a leg sweep technique to get plaintiff to the ground. Dkt. No. 105 at ¶ 27 (Malec Decl.); Dkt. 110 at 16 (Opp.). The Court finds this force was reasonable, especially using other Fourth Amendment cases as benchmarks. For example, in *Holland v. Azevedo*, 2016 U.S. Dist. LEXIS 59418, *24-25 (N.D.Cal. 2016), the district court found the plaintiff there had:

> …not established a prima facie case of a significant Fourth Amendment intrusion. Rather, the evidence on this record conclusively establishes that Defendants employed a level of force that is low on the continuum of tactics available to police officers. Defendants broke Plaintiff's passenger side window, opened the passenger door, and attempted to pull her from the car through the passenger door. There is no evidence that Defendants used force, such as kicks, punches, pepper spray, or baton blows, to effectuate her arrest. This case is unlike *Coles v. Eagle*, where the Ninth Circuit determined that the plaintiff had established a significant Fourth Amendment intrusion where the officers broke the driver's side glass window, pulled the plaintiff through the broken window, kicked plaintiff in the upper torso during the extraction, and continued to beat plaintiff until the officers handcuffed him. The Court concludes that the force used to extract Plaintiff through the door was not capable of inflicting significant pain and causing serious injury. There is no evidence that officers used any force greater than necessary to effectuate a lawful arrest.

The Court finds the instant action analogous to *Holland*, and reaches the same conclusion – there is no evidence the officers used greater force than necessary to effectuate a lawful arrest.

**Applied Control Hold While Plaintiff was on the Ground**. To the extent plaintiff's claim rests on the control hold applied by defendant Officer Shepard once the officers forced plaintiff to the ground, the force was objectively reasonable as a matter of law. The officers argue plaintiff did not comply with repeated orders to put his hands behind his back, and he instead tensed and bent his right arm to keep it in front of his head. Dkt. No. 105 at ¶ 28 (Malec Decl.). Plaintiff argues this request was physically impossible, however defendants were able to put his right hand behind his back and in handcuffs. Dkt. No. 110 at 8 (Opp.). Even if plaintiff was not resisting at the time, it was reasonable to apply some sort of physical hold prior to handcuffing him. *See Graham*, 490 U.S. at 396 (arrest necessarily involves some degree of physical coercion).

**Knee Strikes**. The Court turns to the force used by defendant Officer Malec through knee

strikes. Plaintiff failed to comply with commands to place his right arm behind his back. Dkt. No. 105 at ¶ 28 (Malec Decl.). Defendant delivered two knee strikes to plaintiff's right bicep, with the first knee strike being unsuccessful. Dkt. No. 105 at ¶¶ 28, 29 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Defendants argue they told plaintiff verbally to place his right hand behind his back, and employed force when he did not comply. Dkt. No. 100 at 18 (Mot.). The Court agrees the force was proportionate and reasonable in light of plaintiff's failure to comply with the officers' commands.

**Probable Cause**. Defendants' declarations and body worn camera footage strongly support a finding of probable cause to use force. Dkt. Nos. 103 (Yu Decl.), 104 (Cristiani Decl.), 105 (Malec Decl. Ex. A – body cam video) 106 (Goodman Decl.), 107 (Shepard Decl.). Plaintiff was repeatedly given clear and reasonable instructions by the defendant officers but the instructions were not followed. Officer Malec signaled with his patrol vehicle lights and his verbal commands over the loudspeaker for plaintiff to pull over. Plaintiff did not. Officers repeatedly asked plaintiff to exit his vehicle. Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶¶ 23, 24 (Malec Decl.). Plaintiff did not. Dkt. No. 105 at ¶ 19 (Malec Decl.). After breaking the car window, defendants repeatedly ordered plaintiff to exit the vehicle. Dkt. No. 110 at 13 (Opp.); Dkt. No. 105 at ¶ 19 (Malec Decl.). Plaintiff did not move or otherwise acknowledge the orders. Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶¶ 23, 24 (Malec Decl.). Once removed from the vehicle, the officers ordered plaintiff to get on the ground and place his hands behind his back. Dkt. No. 105 at ¶ 28 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Plaintiff did not. Dkt. No. 105 at ¶ 28 (Malec Decl.). Plaintiff delayed and obstructed defendants' performance of their duties. On this record, there is no genuine dispute of material fact that defendants had probable cause to arrest plaintiff for violating Cal. Penal Code § 148(a)(1), resisting, delaying, or obstructing an officer. Plaintiff had no legal right under § 148(a)(1) to disregard defendants' orders, and the officers' use of force was reasonable and proportionate.

### B.     Government Interest in Use of Force

Under *Graham v. Connor*, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively

10

resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). These factors are not exclusive and are "simply a means by which to determine objectively 'the amount of force that is necessary in a particular situation.'" *Deorle*, 272 F.3d at 1280 (quoting *Graham*, 490 U.S. at 396-97). In other words, the Court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). For example, in some cases the Court may find it necessary to consider the availability of alternative methods of capturing or subduing a suspect. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Although officers need not employ the least intrusive degree of force possible, they must consider less intrusive methods of effecting an arrest, and the presence of feasible alternatives factors into the *Graham* analysis. *Bryan*, 630 F.3d at 831.

### 1. Severity of the Crime

When considering the severity of plaintiff's underlying crimes, the Court is mindful to construe facts in the light most favorable to the plaintiff. *See KRL v. Estate of Moore*, 512 F.3d 1184, 1188–89 (9th Cir. 2008). Although plaintiff's initial offense, an illegal U-turn, was not serious, the situation quickly escalated. Defendant Officer Malec saw plaintiff make the illegal U-turn and attempted to pull plaintiff over, activating emergency lights and using the loudspeaker. Dkt. No. 105 at ¶ 5 (Malec Decl.). Plaintiff failed to comply with Officer Malec's commands to "pull over" and "stop [his] vehicle" and continued to drive. Dkt. No. 105 at ¶¶ 8, 10, 19 (Malec Decl.); Dkt. No. 110 at 5, 7 (Opp.). Plaintiff thereafter refused to exit his vehicle after repeated commands from defendants, obstructing police officers from performing their duties and resisting arrest. Cal. Penal Code § 148(a)(1) (Resisting Arrest); Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶¶ 23, 24 (Malec Decl.). Individually, plaintiff's traffic violations -- the illegal U-turn, failing to stop his vehicle when instructed to do so, initiating a low-speed car chase, and resisting arrest by a police officer -- are not typically serious offenses. *See Mattos v. Agarano*, 661 F.3d 433, 444 (9th Cir. 2011) (holding that a plaintiff's failure to sign a traffic citation and speeding in a school zone were

11

not serious offenses); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (noting that obstructing a police officer is generally not a severe crime for purposes of a Fourth Amendment excessive force analysis). However, the Court finds that the totality of the circumstances and continuous disregard for the officers' orders weigh in favor of the defendants.

### 2. Threat

The Court next turns to whether plaintiff posed an immediate threat to the safety of the defendant officers. Plaintiff was unarmed and never attempted to harm defendants in any way during the incident. Dkt. No. 110 at 8 (Opp.). Plaintiff's vehicle was blocked with Sgt. Goodman's patrol vehicle in front, Officer Malec's patrol vehicle behind, and the shoulder of the freeway on the right. Dkt. No. 105 at ¶ 17 (Malec Decl.). However, plaintiff did not turn off his vehicle after it came to a stop. Dkt. No. 105 at ¶¶ 18, 19 (Malec Decl.). Despite being told multiple times to exit his vehicle, plaintiff did not move or otherwise acknowledge or communicate with the defendant officers. Dkt. No. 110 at 8 (Opp.); Dkt. No. 105 at ¶¶ 23, 24 (Malec Decl.). Rather, plaintiff remained in his running vehicle, continued to hold his phone, and stared straight ahead blankly. Dkt. No. 105 at ¶ 19 (Malec Decl.). Based on these facts, the Court finds that the officers could have reasonably perceived an immediate threat to their safety.

### 3. Active Resistance to Arrest

Finally, the Court looks at whether plaintiff was "actively resisting arrest or attempting to evade arrest by flight and whether any other exigent circumstances … existed at the time of the arrest." *Coles*, 704 F.3d at 629. Here, the evidence shows (1) plaintiff failed to pull over when told to do so; (2) defendants repeatedly asked plaintiff to exit his vehicle voluntarily, and he refused (3) after breaking plaintiff's window the officers again asked plaintiff to exit his vehicle and he did not. Dkt. No. 105 at ¶¶ 19, 23, 24 (Malec Decl.); Dkt. No. 110 at 8 (Opp.). Moreover, defendants allege plaintiff leaned towards the center console of the vehicle during the time he was directed to exit the vehicle -- plaintiff does not confirm or deny doing so. Dkt. No. 105 at ¶¶ 23, 26 (Malec Decl.). The Court concludes that plaintiff resisted arrest. *See Mattos*, 661 F.3d at 445 (suspect who "refused to

12

get out of her car when requested to do so and later stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car" had "engaged in some resistance to arrest").

Ultimately, the severity of "the force which is applied must be balanced against the need for that force." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003); *Young*, 655 F.3d at 1166 ("We conclude our analysis of whether the force used by [the defendant] was reasonable by balancing "the gravity of the intrusion on the individual against the government's need for that intrusion.") (citation omitted).  The force used against plaintiff was low, the government had an interest in the use of that force, and, construing facts in the light most favorable to plaintiff, the force defendants used was not excessive and did not violate the Fourth Amendment.

## II. Qualified Immunity

However, even if the Court concluded that defendants had used excessive force in effectuating plaintiff's arrest, defendants would still be entitled to qualified immunity.  The force used by Defendants did not violate clearly established law such that the officers would be "on notice their conduct [was] unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." (internal quotation marks omitted)); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Accordingly, defendants are entitled to qualified immunity, and the Court GRANTS defendants' motion for summary judgment on plaintiff's excessive force claim.

///

///

13

# CONCLUSION

The Court GRANTS defendants' motion for summary judgment.

**IT IS SO ORDERED**.

Dated: April 28, 2020

_____
SUSAN ILLSTON
United States District Judge